UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | )    Chapter 11 |
| Lamson and Goodnow Manufacturing | ) |
| Company, et al., | )    Case No. 14-30798 (HJB) |
| | )     (Jointly Administered) |
| Debtors. | ) |
| | ) |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
<u>SUPERPRIORITY TO PROPOSED DIP LENDER</u>**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by

and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in

opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and

superpriority to proposed DIP lender.  Newtek previously filed its initial opposition (Docket No.

19) on August 19, 2014, and restates and relies upon the arguments put therein and further states

as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency

motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to

accommodate the Debtors' request for the use of its cash collateral until September 3, 2014.  The

terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket

No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition.  Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected.  Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection.  Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed.  Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability.  *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada. However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels. Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding. Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million. The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking. Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014          /s/ Frank F. McGinn
                                  Frank F. McGinn (BBO# 564729)
                                  ffm@bostonbusinesslaw.com
                                  Hackett Feinberg P.C.
                                  155 Federal Street, 9th Floor
                                  Boston, MA  02110
                                  Tel. (617) 422-0200
                                  Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Lamson and Goodnow Manufacturing | ) | |
| Company, et al., | ) | Case No. 14-30798 (HJB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
<u>SUPERPRIORITY TO PROPOSED DIP LENDER</u>**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by
and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in
opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and
superpriority to proposed DIP lender.  Newtek previously filed its initial opposition (Docket No.
19) on August 19, 2014, and restates and relies upon the arguments put therein and further states
as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency
motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to
accommodate the Debtors' request for the use of its cash collateral until September 3, 2014.  The
terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket
No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition. Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected. Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection. Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed. Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability. *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc*., 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada. However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels. Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding. Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million. The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking. Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014              /s/ Frank F. McGinn_____
                                      Frank F. McGinn (BBO# 564729)
                                      ffm@bostonbusinesslaw.com
                                      Hackett Feinberg P.C.
                                      155 Federal Street, 9th Floor
                                      Boston, MA  02110
                                      Tel. (617) 422-0200
                                      Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Lamson and Goodnow Manufacturing | ) |
| Company, et al., | ) Case No. 14-30798 (HJB) |
| | ) (Jointly Administered) |
| Debtors. | ) |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
SUPERPRIORITY TO PROPOSED DIP LENDER**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by
and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in
opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and
superpriority to proposed DIP lender.  Newtek previously filed its initial opposition (Docket No.
19) on August 19, 2014, and restates and relies upon the arguments put therein and further states
as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency
motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to
accommodate the Debtors' request for the use of its cash collateral until September 3, 2014.  The
terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket
No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition.  Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected.  Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection.  Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed.  Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability.  *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is

skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the

use of up to 50.915 MWH of electricity from TransCanada. However, Newtek's initial inquiries

indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to

achieve full value of the contract requires higher power usage levels. Keeping in mind that the

Debtors' business plan involves the sale of the real property tied to this power contract, the

Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of

the real property seeing value in the contract above the $200,000 cure amount TransCanada is

demanding. Newtek believes that the foregoing scenario is highly unlikely and that the contract

has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek

expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP,

and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and

statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and

SBA in excess of $3 million. The Debtors have not demonstrated that the collateral above

provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these

oversecured creditors interest and service the additional debt to DIP Lending the Debtors are

seeking. Until and unless the Debtors make this showing, Newtek submits that this Court should

deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014           /s/ Frank F. McGinn
                                    Frank F. McGinn (BBO# 564729)
                                    ffm@bostonbusinesslaw.com
                                    Hackett Feinberg P.C.
                                    155 Federal Street, 9th Floor
                                    Boston, MA  02110
                                    Tel. (617) 422-0200
                                    Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| Lamson and Goodnow Manufacturing | ) |
| Company, et al., | ) Case No. 14-30798 (HJB) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
SUPERPRIORITY TO PROPOSED DIP LENDER**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by
and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in
opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and
superpriority to proposed DIP lender.  Newtek previously filed its initial opposition (Docket No.
19) on August 19, 2014, and restates and relies upon the arguments put therein and further states
as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency
motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to
accommodate the Debtors' request for the use of its cash collateral until September 3, 2014.  The
terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket
No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition. Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected. Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection. Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed. Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability. *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada. However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels. Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding. Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million. The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking. Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014          /s/ Frank F. McGinn
                                  Frank F. McGinn (BBO# 564729)
                                  ffm@bostonbusinesslaw.com
                                  Hackett Feinberg P.C.
                                  155 Federal Street, 9th Floor
                                  Boston, MA  02110
                                  Tel. (617) 422-0200
                                  Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Lamson and Goodnow Manufacturing | ) | |
| Company, et al., | ) | Case No. 14-30798 (HJB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
SUPERPRIORITY TO PROPOSED DIP LENDER**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and superpriority to proposed DIP lender. Newtek previously filed its initial opposition (Docket No. 19) on August 19, 2014, and restates and relies upon the arguments put therein and further states as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to accommodate the Debtors' request for the use of its cash collateral until September 3, 2014. The terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition.  Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected.  Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection.  Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed.  Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability.  *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada. However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels. Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding. Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million. The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking. Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated: September 3, 2014          /s/ Frank F. McGinn
                                 Frank F. McGinn (BBO# 564729)
                                 ffm@bostonbusinesslaw.com
                                 Hackett Feinberg P.C.
                                 155 Federal Street, 9th Floor
                                 Boston, MA  02110
                                 Tel. (617) 422-0200
                                 Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Lamson and Goodnow Manufacturing | ) |
| Company, et al., | ) Case No. 14-30798 (HJB) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
SUPERPRIORITY TO PROPOSED DIP LENDER**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by

and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in

opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and

superpriority to proposed DIP lender.  Newtek previously filed its initial opposition (Docket No.

19) on August 19, 2014, and restates and relies upon the arguments put therein and further states

as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency

motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to

accommodate the Debtors' request for the use of its cash collateral until September 3, 2014.  The

terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket

No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral. To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014). This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B. This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A). Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition.  Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

*DIP Priming Liens and Superpriority*

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected.  Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection.  Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed.  Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability.  *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada.  However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels.  Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding.  Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million.  The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking.  Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without

limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending

facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this

Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014           /s/ Frank F. McGinn
                                    Frank F. McGinn (BBO# 564729)
                                    ffm@bostonbusinesslaw.com
                                    Hackett Feinberg P.C.
                                    155 Federal Street, 9th Floor
                                    Boston, MA  02110
                                    Tel. (617) 422-0200
                                    Fax. (617) 422-0383

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Lamson and Goodnow Manufacturing | ) | |
| Company, et al., | ) | Case No. 14-30798 (HJB) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**SUPPLEMENTAL STATEMENT OF NEWTEK SMALL BUSINESS FINANCING, INC.
IN OPPOSITION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL
AND PROPOSED GRANT OF PRIMING LIENS AND
<u>SUPERPRIORITY TO PROPOSED DIP LENDER</u>**

Newtek Small Business Finance, Inc. ("Newtek"), a secured creditor of the Debtors, by and through its counsel, hereby files its supplemental statement ("Supplemental Statement") in opposition to Debtors' continued use of cash collateral and proposed grant of priming liens and superpriority to proposed DIP lender. Newtek previously filed its initial opposition (Docket No. 19) on August 19, 2014, and restates and relies upon the arguments put therein and further states as follows.

Newtek appeared before Judge Hoffman at the hearing on the Debtors' initial emergency motions for use of cash collateral and for DIP financing on August 19, 2014 and agreed to accommodate the Debtors' request for the use of its cash collateral until September 3, 2014. The terms of this agreement are set forth in the Preliminary Order issued by Judge Hoffman (Docket No. 26) dated as of August 19, 2014.

*Budgeting and Cash Collateral*

The Debtors have provided some financial information as required by the Preliminary Cash Collateral Order, but the information provided to date does not demonstrate that Newtek is adequately protected for the use of its cash collateral.  To the contrary, the most recent actual budgeting information supplied to Newtek's counsel on September 2, 2014 (attached hereto as Exhibit "A") no longer provides for adequate protection payments to Newtek, even though the Debtors' previous budget did provide for adequate protection payments to Newtek (see Exhibit "B" attached hereto and the initial cash collateral budget filed with this court (Docket No. 28) by the debtors on August 21, 2014).   This change was pointed out to Debtors' counsel who has indicated that the Debtors intend to make the promised payment.

Moreover, the budgets are internally inconsistent – for example the ending cash balance forecast for the week ending September 6, 2014 in Exhibit A is $168,171, while the beginning cash balance for the week ending September 13, 2014 is $235,048 in Exhibit B.  This inconsistency was pointed out to Debtors' counsel, but no response has been provided.

Additionally, the Debtor's budget relies on a capital infusion of $230,000 from DIP Lending during the week ending September 6, 2014 (see Exhibit A), but the monthly payments associated with such a capital infusion are not reflected in the budget (see Exhibit B).

Additionally, the Debtors' projected cash receipts in the first two weeks of the cash collateral budget were $7,000 and $45,454 (see Exhibit B), whereas actual cash collections in the first two weeks of this case were $635 and $29,861 respectively (see Exhibit A).  Although this is a small sample size, a negative 34% variance in cash collections supports Newtek's view that the Debtors' projections are overly optimistic.

Finally, the receipts from accounts receivable turned over from a Newtek affiliate to Debtors appears (see income item "Newtec LOC receipts" in Exhibit B) to be overstated to the extent that the Debtors have not accounted for a significant portion of the turned-over accounts receivable that the Debtors had already collected surreptitiously pre-petition.  Newtek believes these receipts are overstated by approximately $20,000.

In aggregate, if the cash collateral budget attached as Exhibit B were adjusted to reflect the issues outlined above, Newtek believes that the Debtors' cash balances will become negative by the end of September or early October of this year – even with the proposed capital infusion from DIP Lending.

<i>DIP Priming Liens and Superpriority</i>

Newtek maintains its objection to the grant of any priming liens or superpriority liens against its collateral, because the Debtors have not demonstrated that Newtek is adequately protected.  Pursuant to §364(d)(2), the Debtors bear the burden of proof on the issue of adequate protection.  Newtek believes that its secured position in all of the Debtors' business assets including the Debtors' real estate will not be adequately protected if the Proposed DIP Agreement or DIP Motion were allowed.  Courts should be "particularly cautious" when determining whether the existing creditor that is being primed is adequately protected. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  Additionally, when the issue is one of adequate protection for a secured creditor that is being primed, there must be some realistic assessment of future contingencies which would alter profitability.  *See Suntrust Bank v. Den-Mark Constr., Inc.,* 406 B.R. 683, 701-03 (E.D.N.C. 2009)(reversing bankruptcy court's grant of superpriority liens to DIP lender where secured lender was not sufficiently assured of that it would receive the indubitable equivalence of its existing security due to narrow equity cushion

and speculative prospects of collateral value enhancements); *In re Timber Products, Inc.*, 125

B.R. 433 (Bankr. W.D.Pa. 1990)(existing lienholders could not be primed where debtor failed to

account for negative contingencies and employed optimistic projections); *In re Stoney Creek*

*Technologies, LLC*, 364 B.R. 882 (Bankr. E.D.Pa. 2007)(even assuming a large equity cushion,

the debtor failed to demonstrate that it could operate profitably, and therefore existing lienholder

would not be required to gamble on a speculative business model with narrow margins).  Like

the debtors in *Suntrust, Timber Products and Stoney Creek*, the Debtors here have not put forth a

coherent business plan with a reasonable chance of success.  Consequently, Newtek should not

be forced to gamble on the Debtors' doubtful business prospects without the security it possessed

on the Petition Date. As observed in *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3rd Cir.

1994)(ruling that secured creditor was not adequately protected and superpriority post-petition

financing should not have been granted): "Congress did not contemplate that a secured creditor

could find its position eroded and, as compensation for the erosion, be offered an opportunity to

recoup dependent upon the success of a business with inherently risky prospects."

*Newtek's Collateral*

The Debtors have stated in their Cash Collateral Motion that its real property is worth

approximately $2,080,000 based on a broker's opinion of value attached to the Motion as Exhibit

D.  The real property is subject to mortgages to Newtek and the SBA totaling approximately

$3,100,000.  Although the Debtors allege that SBA holds the senior position in the real property,

Newtek believes that the SBA may agree that its position is supposed to be subordinate to

Newtek's position. The Debtors are marketing the property for sale, but given that the property is

a unique 18 acre parcel made up of several buildings, Newtek believes that it will take many

months or years to find a buyer willing to pay at or near the listing price of $2,100,000.  It is

worth noting that the Debtors have characterized the property as being inefficient, so Newtek is skeptical that a buyer who can make more efficient use of the real estate will be found quickly.

Additionally, the Debtors have ascribed a value of $868,000 to a power contract for the use of up to 50.915 MWH of electricity from TransCanada.  However, Newtek's initial inquiries indicate that the power contract is site-specific, is subject to a cure claim of $200,000 and to achieve full value of the contract requires higher power usage levels.  Keeping in mind that the Debtors' business plan involves the sale of the real property tied to this power contract, the Debtors' ability to squeeze any value from this contract hinges on the hypothetical purchaser of the real property seeing value in the contract above the $200,000 cure amount TransCanada is demanding.  Newtek believes that the foregoing scenario is highly unlikely and that the contract has no value if the Debtors sell the real property.

Newtek's equipment appraiser has inspected its equipment collateral, and Newtek expects to have in the next week an updated appraisal.

The value of Newtek's other collateral (chiefly Inventory, Accounts Receivable, WIP, and Anderson Guaranty) are difficult to ascertain until the debtors file their schedules and statement of financial affairs.

In any case, the foregoing collateral is encumbered by secured claims of Newtek and SBA in excess of $3 million.  The Debtors have not demonstrated that the collateral above provides an equity cushion sufficient to adequately protect Newtek and SBA, pay these oversecured creditors interest and service the additional debt to DIP Lending the Debtors are seeking.  Until and unless the Debtors make this showing, Newtek submits that this Court should deny the request to provide priming liens and superpriorty status to DIP Lending.

Newtek reserves all of its rights, remedies claims and counterclaims, including without limitation, its objections to the use of its cash collateral and terms of any proposed DIP lending facility.

WHEREFORE, Newtek Small Business Finance, Inc. respectfully requests that this Court deny the Debtors' continued use of cash collateral and deny the DIP Motion.

Respectfully submitted,

Newtek Small Business Finance, Inc.
By its attorneys,

Dated:  September 3, 2014          /s/ Frank F. McGinn
Frank F. McGinn (BBO# 564729)
ffm@bostonbusinesslaw.com
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA  02110
Tel. (617) 422-0200
Fax. (617) 422-0383